IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| L.B., individually and on behalf of D.B. a minor,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, BUREAU OF INDIAN AFFAIRS, and DANA BULLCOMING, an agent of the Bureau of Indian Affairs sued in his individual capacity,<br><br>　　　　　　Defendants. | CV 18-74-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff L.B. filed this action, individually and on behalf of D.B., against Defendants United States, Bureau of Indian Affairs, and Dana Bullcoming based on a sexual assault of L.B. resulting in the birth of D.B.

Presently before the Court are L.B.'s Motion for Partial Summary Judgment (Doc. 23), and Defendant United States' Motion for Summary Judgment (Doc. 34). The motions have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and are fully briefed and ripe for the Court's review.

Having considered the parties' submissions and oral arguments, the Court **RECOMMENDS**, L.B.'s Motion for Partial Summary Judgment be **DENIED**, and the United States' Motion for Summary Judgment be **GRANTED**.

1

I. **BACKGROUND**

A. **Factual Background**[1]

On the night of October 31, 2015, L.B. reported to law enforcement that her mother was driving while intoxicated. (Doc. 33 at ¶ 1.) Bureau of Indian Affairs ("BIA") Officer Dana Bullcoming ("Bullcoming") responded, and after finding that L.B.'s mother was safe, he went to L.B.'s residence. *Id.*

Bullcoming entered L.B.'s home and asked her if she was alone. *Id.* at ¶ 2. L.B. responded that her children were asleep in another room. *Id.* The parties dispute whether Bullcoming entered L.B.'s home with consent. L.B. reported to FBI agents that she was asleep in the living room when she awoke to find Bullcoming standing in front of her. (Doc. 33 at ¶ 2; Doc. 42 at ¶ 11.) The United States maintains that Bullcoming knocked on the door and L.B. answered. *Id.* In any event, after entering L.B.'s home, Bullcoming told L.B. he would need to call social services and arrest her for child endangerment because she was intoxicated while in the presence of her children. *Id.* L.B. told Bullcoming she would lose her new job if she was arrested and pleaded with him not to arrest her. (Doc. 33 at ¶ 2; Doc. 42 at ¶ 17.)

---

[1] The following facts are taken from the parties' statements of disputed facts and are undisputed unless noted otherwise.

2

L.B. and Bullcoming then went outside to his patrol car so L.B. could take a breathalyzer test. (Doc. 33 at ¶ 3; Doc. 42 at ¶18.) The breathalyzer test indicated L.B. had a BAC greater than 0.1. *Id.* Bullcoming then repeatedly told L.B. "something had to be done." (Doc. 33 at ¶ 3; Doc. 42 at 20.) L.B. ultimately asked Bullcoming if he meant "sex"; he replied "yes." (Doc. 33 at ¶ 3.) L.B. later explained that she felt she had two choices: have sex with Bullcoming or go to jail. (Doc. 42 at ¶ 23.)

Bullcoming had unprotected sex with L.B., and then left the residence. (Doc. 33 at ¶ 4.) L.B. became pregnant as a result of the encounter, and D.B. is the biological child of L.B. and Bullcoming. *Id.*

In 2017, the United States indicted Bullcoming for deprivation of rights under color of law, in violation of 18 U.S.C. § 242, and false statement to a federal officer, in violation of 18 U.S.C. § 1001. The Indictment provided:

> DANA MICHAEL BULLCOMING, then a law enforcement officer for the Bureau of Indian Affairs, while acting under color of law, did willfully deprive L.B., of a right secured and protected by the Constitution and laws of the United States; that is, the right not to be deprived of liberty without due process of law, which includes the right to bodily integrity; specifically, the defendant, DANA MICHAEL BULLCOMING, coerced L.B. into engaging in sexual intercourse with him under threat of arrest if she refused, and such coerced sexual activity resulted in bodily injury to L.B. in violation of 18 U.S.C. § 242.

(Doc. 33 at ¶ 5.) Bullcoming pleaded guilty to violating 18 U.S.C. § 242, and he is currently serving his sentence.

B.  **Procedural Background**

On April 23, 2018, L.B. brought this action pursuant to the Federal Tort Claims Act ("FTCA") and 42 U.S.C. § 1983, alleging several intentional torts and violations of the Fourth, Fifth, and Fourteenth Amendments. On November 2, 2018, L.B. filed a motion for partial summary judgment, asserting the United States' liability for Bullcoming's actions. L.B. argues the government does not have immunity and is subject to liability under the FTCA. She asserts the government is vicariously liable for Bullcoming's actions under the doctrine of *respondeat superior* and the principles set forth in the Restatement (Second) of Agency § 214.

On December 14, 2018, the United States filed a cross-motion for summary judgment. (Doc. 34). The government argues it should be granted summary judgment because Bullcoming was not acting within the scope of his employment with the BIA. The government therefore contends Bullcoming's actions do not fall within the FTCA's waiver of sovereign immunity and grant of jurisdiction.

II.  **DISCUSSION**

A.  **Summary Judgment Standard**

A court will grant summary judgment if the movant can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

The moving party has the initial burden to submit evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its initial responsibility, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.     The Government's Liability Under the Federal Tort Claims Act**

Any action against the United States begins with an analysis of its sovereign immunity. "It is elementary that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

The FTCA is a limited waiver of the United States' sovereign immunity that permits legal actions against the government based on the tortious conduct of federal employees acting within the scope of their employment. The FTCA waives sovereign immunity under 28 U.S.C. §§ 1346(b)(1) and 2674. *Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006). As discussed in *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994), Section 1346(b)(1) provides a jurisdictional grant, and contains six discrete requirements:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims [1] against the United States, [2] for money damages . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] *while acting within the scope of his office or employment* [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). If a claim falls within this jurisdictional grant, Section 2674 renders the United States liable "in the same manner and to the same extent as a private individual under like circumstances." *Dolan*, 546 U.S. at 485.

The FTCA also sets forth several exceptions to the United States' waiver of sovereign immunity under 28 U.S.C. § 2680, including excepting "any claim arising out of assault, battery, false imprisonment, false arrest . . . [or] abuse of process." 28 U.S.C. § 2680(h). But this "intentional torts exception" also contains a "law

enforcement proviso," which restores the FTCA's waiver of sovereign immunity for certain intentional torts committed by law enforcement officers:

> *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

28 U.S.C. § 2680(h) (emphasis in original).

The scope of the law enforcement proviso was considered by the Supreme Court in *Millbrook v. U.S.*, 569 U.S. 50 (2013). In its decision, the Court made clear that "[t]he provisio's cross-reference to §1346(b) incorporates [the] requirement that the acts or omissions giving rise to the claim occur while the officer is 'acting within the scope of his office or employment.'" *Id.* at 55.

Therefore, the FTCA's waiver of sovereign immunity and grant of jurisdiction, and the act's proviso which restores the waiver of sovereign immunity for intentional torts of law enforcement officers, are both circumscribed by the scope of employment requirement. Simply put, if L.B. cannot establish that Bullcoming's tortious conduct was within the scope of his employment, her claims do not fall within the FTCA waiver of sovereign immunity.

Whether an officer acted within the scope of his employment under the FTCA is evaluated "according to the principles of *respondeat superior* of the state in which the alleged tort occurred." *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996)

(citing *Pelletier v. Federal Home Loan Bank*, 968 F.2d 865, 876 (9th Cir. 1992)). Where the facts regarding scope are not in dispute, "the determination of the scope of employment is a question of law[.]" *Lutz v. United States*, 685 F.2d 1178, 1182 (9th Cir. 1982).

### i. Montana's *Respondeat Superior* Law - Scope of Employment

Montana's *respondeat superior* principles hold employers liable for their employee's torts, including those that are willful and malicious, if committed within the scope of the employee's employment. *Kornec v. Mike Horse Mining & Milling Co.*, 180 P.2d 252, 256 (Mont. 1947). An employee's actions are in the scope of his employment when they are "in furtherance of his employer's interest or for the benefit of his master." *Id.* An employee's actions made "entirely for his own benefit" are generally not within the scope of his employment. *Id.* "The test of the [employer's] liability is not whether the [act] was committed in accordance with the [employer's] instructions but whether the act complained of arose out of and was committed in prosecution of the task the servant was performing for his master." *Id.* at 257.

The furtherance test has been applied by the Montana Supreme Court in a case involving sexual assault by a state employee. *Maguire v. State*, 835 P.2d 755 (Mont. 1992). In *Maguire*, an employee of the Montana Developmental Center assaulted and raped an autistic and severely mentally disabled patient, resulting in the patient's

pregnancy. *Id.* at 757.  The employee had primary responsibility for caring for the patient, including bathing and dressing her. *Id.*

The Montana Supreme Court declined to extend liability to the state. The court explained "[n]ormally, an employer would not be liable for the tortious acts of its employee performed outside the scope of employment." *Id.* at 758. Relying on *Kornec*, the court reaffirmed that to be within the scope of employment, the employee's conduct must be in "furtherance of his employer's interest," or "for the benefit of his master." *Id.* at 758. Applying these principles, the court concluded "[i]t is clear this rape was outside the scope of [the employee's] employment." *Maguire*, 835 P.2d at 758.

Application of the furtherance test and the *Maguire* decision to this case leads to the conclusion that Bullcoming was not acting within the scope of his employment under Montana law. First, it cannot be reasonably argued that Bullcoming raped L.B. for the benefit of the BIA. He raped L.B. solely for his own personal benefit.[2] Next, although Bullcoming's act arose out of conduct connected to his law enforcement duties, he did not rape L.B. in prosecution of those duties. In short, the circumstances of Bullcoming's employment created an opportunity for

---

[2] This case is unlike *Kornec*, where the Montana Supreme Court found the tortious conduct arose from the victim's attempt to interfere with the employee's job duties and was thus motivated in part by a desire to serve the employer.

him to rape L.B., but he clearly did not rape L.B. in furtherance of the BIA's interests.

Several decisions of the Montana Supreme Court also rely on the Restatement (Second) of Agency § 229 in evaluating whether conduct falls within the scope of employment. That section provides in full as follows[3]:

> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>
> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
>> (a) whether or not the act is one commonly done by such servants;
>> (b) the time, place and purpose of the act;
>> (c) the previous relations between the master and the servant;
>> (d) the extent to which the business of the master is apportioned between different servants;
>> (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
>> (f) whether or not the master has reason to expect that such an act will be done;
>> (g) the similarity in quality of the act done to the act authorized;
>> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
>> (i) the extent of departure from the normal method of accomplishing an authorized result; and

---

[3] Several Montana decisions only apply subsections (a)(b)(f) and (i) in determining whether conduct is similar or incidental. See e.g., *Kerr v. St. Vincent Healthcare*, 2016 WL 1171892, *3 (D. Mont. 2015); *Keller v. Safeway Stores*, 108 P.2d 605, 610 (Mont. 1940); and *Kornec v. Mike Horse Mining and Milling Co.*, 180 P.2d 252 (Mont. 1947).

>(j) whether or not the act is seriously criminal

Restatement (Second) of Agency § 229.

Application of the Restatement § 229's factors also do not support a finding that Bullcoming's wrongful acts were within the scope of his employment. Rape is obviously not within the same general nature as the conduct BIA authorizes its agents to perform. The Court also cannot find rape to be similar or incidental to Bullcoming's authorized conduct. Law enforcement officers do not commonly rape civilians while performing their duties; the purpose of the act was not in furtherance of the BIA's interest; there is no indication Bullcoming's previous relationship with the BIA provided any notice that he may commit such an act; the act was outside the enterprise of the BIA; there is no indication the BIA had reason to expect the conduct from Bullcoming; there is nothing similar between Bullcoming's act to any act authorized by the BIA; the conduct was a gross deviation from that which was authorized; and the act was seriously criminal.

The only § 229 factors weighing in favor of a determination that Bullcoming's conduct was similar or incidental to that authorized are the time and place of the act, and that the BIA arguably furnished the instrumentality through which the harm was done. The act took place while Bullcoming was on duty; it was committed within the geographical limits of his authority; and the BIA provided the authority which Bullcoming abused in committing the act. But these factors alone are not sufficient.

In fact, all three factors were also present *Maguire*. The state of Montana provided its employee with the opportunity and authority he needed to commit the act, and the rape occurred with the time and place authorized by his employment. Yet the Montana Supreme Court had little difficulty finding it "clear" the rape was outside the scope of employment.

L.B. nevertheless argues that the Montana Supreme Court has expanded *respondeat superior* liability since the court's decision in *Maguire*. Specifically, L.B. points out the Montana Supreme Court rejected application of Restatement (Second) of Agency § 214 in *Maguire*. Section 214 provides for liability of a principal for failure to perform a non-delegable duty, and states:

> A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others from harm caused to them by the failure of such agent to perform the duty.

The Montana Supreme Court in *Maguire* acknowledged that "[o]ther jurisdictions, under theories of vicarious liability, hold an employer liable for the tortious acts of its employees acting outside the scope of employment." *Maguire*, 835 P.2d at 758. But the court found it had previously limited application of the non-delegable duty exception to cases involving inherently dangerous activities. *Id.* at 759. The court acknowledged there were a number of policy reasons to extend employer liability when intentional torts are committed only because of an

employment situation. *Id.* Nevertheless, the court determined "creating a major exception to the respondeat superior doctrine, by extending liability to a caretaker, would constitute a significant extension of Montana law. Without support of prior judicial decisions, such an extension of liability should come from the legislature." *Id.*

Since *Maguire*, however, the Montana Supreme Court has expressly adopted Restatement § 214 to impose liability in a case involving an inherently dangerous activity. *Paull v. Park County*, 218 P.3d 1198, 1205 (Mont. 2009). This Court has also applied § 214 to impose *respondeat superior* liability in a case involving a sexual assault by an employee of a common carrier. *Shepherd v. National Railroad Passenger Corporation*, 2018 WL 5312199 (D. Mont. 2018) (adopting Findings and Recommendations at 2018 WL 5309825). L.B. urges this Court to similarly apply § 214 to impose *respondeat superior* liability here.

L.B.'s argument ignores the fundamental basis for the United States' liability in this case. For there to be any consideration of the United States' liability for Bullcoming's conduct, L.B. must first satisfy the threshold requirement that her claim falls within the FTCA's waiver of sovereign immunity. To do so, she must establish that Bullcoming's actions were within the scope of his employment with the BIA. Without that, the United States has immunity, and this Court has no jurisdiction to consider L.B.'s claims. The state of Montana can choose to alter and

expand *respondeat superior* liability in any number of ways to impose liability for conduct outside the scope of employment, but unless it alters the standard for determining scope of employment, it does not impact the United States' liability under the FTCA. As stated in *Primeaux v. U.S.*, 181 F.3d 876, 878 (8th Cir. 1999) (en banc), "[i]n determining the extent of the government's FTCA liability, scope of employment sets the line. . . . Thus, even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the government's FTCA liability remains limited to employee conduct within the scope of employment, as defined by state law." (Internal citations and quotations omitted.)

Therefore, even if the Montana Supreme Court has expanded other avenues for *respondeat superior* liability, it has not modified its analysis for determining when conduct is within the scope of employment. And since *Maguire*, neither the Montana Supreme Court nor the Montana Legislature have extended scope of employment to include an employee's sexual assault of another at the workplace during work hours. *See Maguire*, 835 P.2d at 759 ("a major change to the respondeat superior doctrine is best left to the legislature.")

L.B. also cites a handful of cases from other jurisdictions where courts have found an on-duty law enforcement officer acts within the scope of his employment when he misuses his authority to commit a sexual assault. L.B. argues these cases mark a trend toward imposing *respondeat superior* liability in these situations.

Nevertheless, the scope of employment principles applied in those cases are plainly distinguishable from Montana's.

In *Red Elk v. United States*, 62 F.3d 1103 (8th Cir. 1995), for example, the father of a thirteen-year-old rape victim sued the United States under the FTCA. The United States argued the rapist, an on-duty tribal police officer, acted outside the scope of his employment. The Eighth Circuit held otherwise. Applying South Dakota law, it held an employer is held liable for its employee's conduct if there is a "nexus between the [employee's] employment and the activity which actually caused the injury." *Id.* at 1106. If the nexus "is sufficient to make the resulting harm foreseeable," the employer will be liable. *Id.*

Additionally, in *Mary M. v. City of Los Angeles*, 814 P.2d 1341 (Cal. 1991), the Supreme Court of California found that an on-duty police officer who raped a detained woman acted within the scope of his employment because the officer's conduct was foreseeable. The test applied by the California Supreme Court was whether "in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 1347 (quoting *Perez v. Van Groningen & Sons, Inc.*, 719 P.2d 676, 678 (Cal. 1986)).

The California Court also considered whether the policy objectives underlying *respondeat superior* liability would be achieved by finding liability. *Id.* The court

concluded policy objectives supported finding the officer acted within the scope of his employment, because employer liability would encourage the city of Los Angeles to "take measures to prevent recurrence of the tortious conduct . . . give greater assurance of compensation to the victim . . . [and] spread the risk of loss among the beneficiaries of the enterprise[.]" *Id*. at 1348-49. The court also found the "extraordinary power and authority" a police officer has over citizens comes with "the potential of abuse," and "[t]he cost resulting from misuse of that power should be borne by the community." *Id.* at 1349.

The Supreme Court of Indiana has also concluded its *respondeat superior* principles provide for employer liability when an on-duty police officer commits a sexual assault. In *Cox v. Evansville Police Department*, 107 N.E.3d 453 (Ind. 2018), the court explained its scope of employment rules and *respondeat superior* policy supported a finding that an officer's sexual assault was within the scope of his employment although "his misconduct was the antithesis of law enforcement and community protection." *Id.* at 464. The court found this fact irrelevant, because under Indiana law, the "critical inquiry is whether the tortious act arose naturally or predictably from the employment context." *Id.*

Unlike the laws in these jurisdictions, Montana's scope of employment inquiry is not based on policy principles, foreseeability, or a nexus between the employee's authorized conduct and his misuse thereof. Rather, Montana law

focuses on whether the tortious act was "in furtherance of the employer's business." *Kerr*, 2016 WL 1171892 at *3. When confronted with facts similarly egregious to these, the Montana Supreme Court firmly adhered to its scope of employment precedent and concluded it was "clear this rape was outside the scope of [the employee's] employment." *Maguire*, 835 P.2d at 183. It is this Court's duty to apply existing Montana law. Although the Montana Supreme Court's scope of employment principles may evolve in the future, it is not within this Court's authority to predict a change in Montana law or "to apply [this Court's] notion of what that change might or ought to be." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998) (quoting *Klingebiel v. Lockheed Aircraft Corp.*, 494 F.2d 345, 346 (9th Cir. 1974)).

Moreover, Montana certainly does not stand alone in declining to extend liability to an employer for a sexual assault of an employee. In fact, the Seventh Circuit recently reversed a judgment against Milwaukee County based on a sexual assault committed by one of its correctional officers in its jail. With respect to the issue of scope of employment, the court said:

> we hold no reasonable jury could find the sexual assaults were in the scope of his employment. No reasonable jury could conclude the sexual assaults were natural, connected, ordinary parts or incidents of contemplated services; were of the same or similar kind of conduct as that [the officer] was employed to perform; or were actuated even to a slight degree by a purpose to serve County. No reasonable jury could conclude the sexual assaults were connected with the employment objectives (much less closely connected) or incidental to them in any way.

17

*Martin v. Milwaukee Cty.*, 904 F.3d 544, 555 (7th Cir. 2018)

This case involves an abhorrent abuse of authority by a federal law enforcement officer. The Court's decision will in no way absolve Bullcoming of his individual civil liability for his criminal conduct. But having determined Bullcoming's tortious conduct was not within the scope of his employment, this Court finds L.B.'s claims do not fall within the FTCA's grant of jurisdiction and waiver of sovereign immunity. The Court therefore recommends the United States' Motion for Summary Judgment be granted.

### III. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment be **DENIED** (Doc. 23), and Defendant United States' Motion for Summary Judgment (Doc. 34) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or

///

///

///

objection is waived.

DATED this 16th day of July, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge