IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| L.B.,<br><br>                    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, BUREAU OF INDIAN AFFAIRS, and DANA BULLCOMING, an agent of the Bureau of Indian Affairs sued in his individual capacity,<br><br>                    Defendants. | CV 18-74-BLG-SPW<br><br>ORDER |

    Before the Court are the parties' competing motions for summary judgment. Plaintiff L.B. asserts that summary judgment in her favor is appropriate because the undisputed facts demonstrate that Defendant Bullcoming was acting in the course and scope of his employment when he violated L.B.'s civil rights. The United States argues that summary judgment in its favor is warranted because the undisputed facts show that Bullcoming was not acting in the course and scope of his employment when he assaulted L.B. The Court held a hearing on the motions on May 12, 2023. For the following reasons, the Court grants summary judgment in favor of the United States, denies L.B.'s motion for summary judgment, and denies the remaining motions as moot.

1

I.   **Background**

*A. Factual Background*

On October 31, 2015, BIA-OJS officer Dana Bullcoming was on-duty, patrolling the Northern Cheyenne Indian Reservation. (Doc. 139 at ¶ 1). BIA-OJS dispatch received a call from L.B., who was reporting her mother for driving home after the pair had been drinking together. (Doc. 139 at ¶ 2). Bullcoming found L.B.'s mother at an apartment, confirmed she was not driving, and then drove to L.B.'s residence. (Doc. 139 at ¶ 4). Bullcoming spoke with L.B. and told her that he might have to call social services and take L.B. in for child endangerment because of her intoxication around her children. (Doc. 139 at ¶ 6). L.B. told Bullcoming that she did not want to go to jail or lose her job. (Doc. 139 at ¶ 7). L.B. told Bullcoming that her children were back in their rooms. The two walked to Bullcoming's patrol car, where Bullcoming administered a breathalyzer test to L.B, which confirmed her intoxication. (Doc. 139 at ¶¶ 8-9).

Bullcoming told L.B., "Something needs to be done about this," and she responded, "Like what do you mean? Like sex?" Bullcoming responded, "Yes." (Doc. 139 at ¶ 10). L.B. and Bullcoming then had unprotected sex. (Doc. 139 at ¶ 11). As Bullcoming left, L.B. asked him if he was working the next night and told him he "should stop by again." (Doc. 139 at ¶ 11). L.B. became pregnant from the encounter and had a child. (Doc. 139 at ¶ 12). The United States prosecuted

2

Bullcoming for Deprivation of Rights Under Color of Law, 18 U.S.C. § 242 and secured a guilty plea and conviction for that offense. (Doc. 139 at ¶ 13).

*B. Procedural History*

This Court, on Findings and Recommendations from Judge Cavan, ruled that Officer Bullcoming's sexual assault of L.B. fell outside the scope of his employment as a BIA police officer and was consequently outside the Federal Tort Claims Act's ("FTCA") limited waiver of sovereign immunity. Judge Cavan found that:

> Application of the furtherance test and the *Maguire* decision to this case leads to the conclusion that Bullcoming was not acting within the scope of his employment under Montana law. First, it cannot be reasonably argued that Bullcoming raped L.B. for the benefit of the BIA. He raped L.B. solely for his own personal benefit. Next, although Bullcoming's act arose out of conduct connected to his law enforcement duties, he did not rape L.B. in prosecution of those duties. In short, the circumstances of Bullcoming's employment created an opportunity for him to rape L.B., but he clearly did not rape L.B. in furtherance of the BIA's interests. Several decisions of the Montana Supreme Court also rely on the Restatement (Second) of Agency § 229 in evaluating whether conduct falls within the scope of employment. That section provides in full as follows:
>
>> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>> (a) whether or not the act is one commonly done by such servants;
>> (b) the time, place and purpose of the act;
>> (c) the previous relations between the master and the servant;

3

> (d) the extent to which the business of the master is apportioned between different servants;
> (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
> (f) whether or not the master has reason to expect that such an act will be done;
> (g) the similarity in quality of the act done to the act authorized;
> (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
> (i) the extent of departure from the normal method of accomplishing an authorized result; and
> (j) whether or not the act is seriously criminal

Restatement (Second) of Agency § 229.

Application of the Restatement § 229's factors also do not support a finding that Bullcoming's wrongful acts were within the scope of his employment. Rape is obviously not within the same general nature as the conduct BIA authorizes its agents to perform. The Court also cannot find rape to be similar or incidental to Bullcoming's authorized conduct. Law enforcement officers do not commonly rape civilians while performing their duties; the purpose of the act was not in furtherance of the BIA's interest; there is no indication Bullcoming's previous relationship with the BIA provided any notice that he may commit such an act; the act was outside the enterprise of the BIA; there is no indication the BIA had reason to expect the conduct from Bullcoming; there is nothing similar between Bullcoming's act to any act authorized by the BIA; the conduct was a gross deviation from that which was authorized; and the act was seriously criminal.

The only § 229 factors weighing in favor of a determination that Bullcoming's conduct was similar or incidental to that authorized are the time and place of the act, and that the BIA arguably furnished the instrumentality through which the harm was done. The act took place while Bullcoming was on duty; it was committed within the geographical limits of his authority; and the BIA provided the authority which Bullcoming abused in committing the act. But these factors alone are not sufficient.

(Doc. 60 at 9-11).

4

This Court adopted Judge Cavan's Findings in their entirety, overruled L.B.'s objections, and granted summary judgment in favor of the United States and against L.B. (Doc. 64 at 7).

L.B. appealed to the 9th Circuit, which then certified a question to the Montana Supreme Court who reformulated the question as: "Under Montana law, do law-enforcement officers act outside the scope of their employment, as a matter of law, when they use their authority as on-duty officers to sexually assault a person they are investigating for a crime?"[1] The Montana Supreme Court answered "no." It held that a mixed motive test must be employed and that whether an officer is acting with a dual motive (one that benefits his employer as well as himself) is a question of fact. *L.B. v. United States*, 515 P.3d 818, 825 (Mont. 2022). (Doc. 95).

The matter is back in District Court on remand from the 9th Circuit following the Montana Supreme Court's ruling. The Ninth Circuit's remand order reads in full:

> "In light of the Montana Supreme Court's August 16, 2022, opinion in response to this Court's August 6, 2021, certification order, this case is reversed and remanded to the district court for further proceedings. *See L.B. v. United States*, 2022 MT 166, ¶ 26, ___ P.3d ___ ('The certified facts establish that Officer Bullcoming was not, as a matter of law, acting outside the scope of his employment when he sexually assaulted L.B. and the question is one for a trier of fact.')."

---

[1] The Ninth Circuit's certified question prior to reformulation was: "Under Montana law, do law-enforcement officers act within the course and scope of their employment when they use their authority as on-duty officers to sexually assault members of the public?" (Doc. 92 at 2).

5

(Doc. 96).

Neither Judge Cavan nor this Court ever determined that law enforcement officers always act outside the course and scope of their duties *as a matter of law* when they sexually assault an individual they are investigating. Rather, this Court and Judge Cavan determined that, under the undisputed material facts and applying Montana law, Bullcoming was acting outside the scope of his employment, and that L.B. had failed to present any evidence to demonstrate that Bullcoming was acting in any way to further the BIA's interests—a prerequisite to determining he was acting in the course and scope of his employment and surviving summary judgment. Nonetheless, the Court will conduct its analysis *de novo*, applying the mixed-motive test specifically articulated by the Montana Supreme Court. *See L.B.*, 515 P.3d at 825.

The parties have each moved for summary judgment once more. (Docs. 109 and 133). There are no disputed issues of material fact. (*See* Docs. 111 and 139).

## II.  Legal Standards

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving

6

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.*

In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### III. Analysis

L.B.'s claim is limited in scope by the FTCA, which requires her to show that the tortious act was caused by the wrongful act of an employee of the Government acting within the scope of his employment. 28 U.S.C. § 1346(b)(1). The FTCA waives the United States' immunity for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of [their] office or employment." *Id.* The Government is liable under circumstances where a private person would be liable to the claimant. *Id.* Whether an employee was acting within the scope of his employment is determined by the laws of the state where the act occurred. *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996). Only the

state's *respondeat superior* principles are incorporated; other theories of vicarious liability are not within the FTCA's sovereign immunity waiver. *Primeaux v. United States*, 181 F.3d 876, 878 (8th Cir. 1999); *Pierson v. United States*, 527 F.2d 459, 464 (9th Cir. 1975).

Because the tort occurred in Montana, the Court applies Montana agency law. L.B. must prove that the act arose out of and was committed in prosecution of the task the servant was performing for his master. Montana imposes vicarious liability on employers for tortious conduct of employees committed while acting within the scope of their employment. *Kornec v. Mike Horse Mining & Milling Co.*, 180 P.2d 252, 256 (Mont. 1947). A tortious act occurs within the scope of employment if the act was authorized by the employer or was incidental to the performance of an authorized act. *Brenden v. City of Billings*, 470 P.3d 168, 173 (Mont. 2020). An unauthorized act is within the scope of employment if it is incidental to the performance of an authorized act and was at least partially motivated by the employee's intent or purpose to serve the employer's interest. *Id.* at 174.

First, the parties disagree on what specific act constitutes the tort in question. L.B. inconsistently defines what act constitutes the tortious conduct for which she is seeking redress. L.B. at times asserts that the act at issue is wrongful deprivation of her rights under the color of law by sexually assaulting her. (Docs. 106 at 9). In

8

the alternative, L.B. asserts that the tort in question is sexual assault. (*See* Doc. 136 at 22). The Government asserts that the act must be the tort of sexual assault. (Doc. 141 at 14). The Government states that it cannot be held liable for constitutional torts, and, for that matter, a constitutional violation is not a cognizable tort under the FTCA. (Doc. 141 at 14-15).

The FTCA is clear in its waiver of sovereign immunity that the United States can only be held liable to the extent that a private actor would be. 18 U.S.C. § 1346(b)(1); *see DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1127 (9th Cir. 2019). The FTCA waives sovereign immunity for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of Government employees while acting within the scope of their employment. 18 U.S.C. § 1346(b)(1). L.B. asserts that the act is the wrongful deprivation of her right to bodily integrity through Bullcoming's sexual assault of her, but she also admits that "only a governmental actor can deprive a person of constitutional rights." (Doc. 106 at 8). Because the FTCA only applies to torts that a private employer could be held liable for, wrongful deprivation cannot be the act here, it can only be the act of sexual assault.[2]

---

[2] L.B. relies on the Montana Supreme Court's definition of the act at issue in support of her claim. (Docs. 106 at 7-8 and 138 at 5). This is a flawed argument for two reasons. First, it is not within the scope of the certified question to the Montana Supreme Court to redefine what constitutes an authorized tort claim under the FTCA nor reform the operative pleadings to include such a claim. (The Montana Supreme Court recognized this limitation in its order, stating "Our review of the certified question is purely an interpretation of law as applied to the agreed facts underlying the action [. . .] The scope of our review is limited to the certified question." ___ P.3d ___, at ¶ 8). The Montana Supreme Court did not find or apply facts except as pertinent to answering the certified question of law.

9

It is the wrongful invasion of L.B.'s person that constitutes the tort, and therefore the wrongful act, at issue. For L.B. to have a cognizable claim upon which relief can be granted under the FTCA, the claimed tort must be the sexual assault. An officer sexually assaulting a person who he is investigating is expressly prohibited by the BIA-OJS Law Enforcement Handbook Sections 1-03 and 5-01. (Doc. 135-8, Ex. 1). Accordingly, sexual assault is an unauthorized act.

Here, because the act is an unauthorized one, the test is whether the act was incidental to the performance of an authorized act and was at least partially motivated by the employee's intent or purpose to serve the employer's interest. Accordingly, to succeed on summary judgment, L.B. must show that Bullcoming's sexual assault of L.B. arose out of his employment with the BIA and that it was within the course and scope of his employment. If the inverse is true, the Government is entitled to summary judgment.

It is beyond dispute that the assault arose out of Bullcoming's employment with the BIA. He showed up to L.B.'s house in response to a dispatch call and it was through his authority under the BIA that he coerced L.B. into sex.

To be within the course and scope of his employment under Montana law, Bullcoming's assault must have been at least incidental to the performance of an

---

Second, even if the Montana Supreme Court defined the act as wrongful deprivation of rights under the color of law, its analysis would be rendered moot because, as discussed here, such a tort is outside the scope of the sovereign immunity waiver under the FTCA and would therefore be subject to dismissal.

10

official act and at least partially motivated by his subjective belief that he was furthering his employer's interests. Here, the act is incidental to the performance of an official act. Bullcoming arrived at L.B.'s home in response to L.B.'s request for service regarding her mother. This satisfies the first prong of the course and scope test. Then, the Court must examine whether Bullcoming was at least partially motivated by his subjective belief that he was furthering the BIA's interests when he sexually assaulted L.B.. In *L.B.*, the Montana Supreme Court held that this is a fact issue, and therefore normally unsuited to summary disposition. 515 P.3d at 828.

However, Bullcoming testified unequivocally at his deposition that he had sex with L.B. solely to serve his personal ends. (Doc. 135-6 at 22:4-7). He stated, "I was selfish, only thought about myself. [. . .] I was only thinking of myself in the sense of that personal—I guess what I've come to understand about myself is self-gratification, in that sense." (Doc. 135-6 at 22:4-7). Bullcoming was asked if he was "acting solely out of your self-interest that night and not for any law enforcement purpose?" (Doc. 135-6 at 22:8-11). Bullcoming answered "Yes." (Doc. 135-6 at 22:12). Bullcoming did not attempt to change his answer even when told by L.B.'s attorney that "unless there's a policing purpose to your interaction with [L.B.], that you'll be left holding the bag". (Doc. 135-6 at 29:13-15).

Given Bullcoming's unequivocal deposition testimony that his actions were based solely on serving his personal interests and had no law enforcement purpose, summary disposition is appropriate. L.B. offers no contrary evidence to dispute this testimony beyond mere assertion. L.B.'s sole argument in rebuttal is that it is within the purview of an officer to give a warning or otherwise divert resources depending on caseload.[3] (Doc. 138 at 16). L.B. presents no evidence that this is what Bullcoming did or intended to do; her argument is purely speculative. L.B. wasn't given a warning, she was assaulted. There is no evidence that Bullcoming's caseload was full or that he wished to avoid doing paperwork. Bare assertions are not sufficient on their own to defeat summary judgment.

Accordingly, with no evidence to the contrary, the Court concludes that, on the undisputed facts before it, Bullcoming had no subjective belief that he was furthering the BIA's interests when he sexually assaulted L.B.

Application of the Restatement (Second) of Agency § 229 factors also mandates a result in the United States' favor. Sexual assault is not an act commonly done by BIA officers. Bullcoming's purpose in committing the act, as discussed previously, was entirely personal. The BIA had no prior indication that

---

[3] L.B. also asserts that the Government's argument on this point is prohibited by judicial estoppel because the Government prosecuted Bullcoming under 18 U.S.C. § 242 for deprivation of rights under color of law. L.B. provides scant analysis or argument as to the mechanics of judicial estoppel. However, for an argument to be barred by judicial estoppel, it must be clearly inconsistent with prior arguments. *United States v. Washington*, 887 F. Supp. 2d 1077, 1092 (D. Mont. 2012). This is not the case here—the Government agrees that Bullcoming abused his position. The argument here concerns whether he did so with any intent to serve the BIA's interests.

Bullcoming was likely to commit sexual assault. (Doc. 135-8). Sexual assault is far removed from the BIA's usual business. The BIA had no reason to expect Bullcoming to sexually assault L.B. Sexual assault is highly dissimilar to the authorized act—investigating a DUI—and is a large departure from the normal course of investigating a DUI. Sexual assault is a serious criminal act, weighing against a finding of course and scope.

L.B. argues that it is foreseeable "that BIA officers would sexually assault native American women, since it has happened in the past." (Doc. 138 at 17). However, there is a difference between sexual assaults occurring previously and sexual assault being an act "commonly done by such servants." BIA-OJS, District V, Special Agent in Charge Lenora Nioce stated in a sworn declaration that law enforcement officers do not commonly sexually assault individuals as part of any investigative or law enforcement function, and that she is "not aware of any previous instance where a BIA-OJS officer sexually assaulted a person he or she was investigating." (Doc. 135-8 at 5). L.B. "disputes that [Nioce's] opinions are factually accurate" on this point, but again offers no evidence in the record to contest Nioce's sworn statement. (Doc. 139 at 11).

Although the Montana Supreme Court has stressed that determining whether a tortious act falls outside the scope of employment is a fact-intensive inquiry, here, based on the undisputed material facts and the parties' agreement that the

13

matter is suitable for summary disposition, the Court concludes that Bullcoming acted outside the scope of his employment when he sexually assaulted L.B. The Court has applied the Restatement § 229 factors as well as considered Bullcoming's unequivocal and against his own self-interest testimony at his deposition regarding his subjective state of mind at the time of the act. L.B. has presented no evidence that Bullcoming acted to further any law enforcement purpose. Accordingly, because there is no evidence that Bullcoming sought to effectuate any law enforcement purpose, he was not acting in the scope of his employment when he sexually assaulted L.B., and the BIA-OJS cannot be held vicariously liable.

## IV. Conclusion

IT IS ORDERED that the United States' Cross-Motion for Summary Judgment (Doc. 133) is GRANTED. IT IS FURTHER ORDERED that L.B.'s Motion for Summary Judgment (Doc. 105) is DENIED. L.B.'s Emergency Motion for Hearing is DENIED as improperly brought before the Court, as ruled at the May 12, 2023, hearing. The United States's Rule 56(d) Motion (Doc. 109), Motion to Strike (Doc. 129), and Motion Regarding Default Judgment and Bench Trial (Doc. 136) are DENIED AS MOOT.

The Clerk of Court is directed to enter judgment in favor of the United States and against L.B. as described in this order, and to close the case.

DATED this 8th day of August, 2023.

                                                                                 SUSAN P. WATTERS  
                                                                                 United States District Judge